# UNITED STATES COURT OF APPEAL

# FOR THE NINTH CIRCUIT

_____

Docket No. 23-55566
_____

## SUSAN PITT

*Plaintiff / Appellant*

v.

## METROPOLITAN TOWER LIFE INSURANCE CO.

*Defendant / Appellee*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
Case No. 3:20-CV-00694-JO-DEB
Hon. Jinsook Ohta

_____

## APPELLANT'S OPENING BRIEF

_____

**WILLIAMS IAGMIN LLP**
*Jon R. Williams, Esq./162818
williams@williamsiagmin.com
2475 Kettner Boulevard
San Diego, CA 92101
(619) 238-0370

Attorneys for Plaintiff/Appellant,
SUSAN PITT

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, there is no publicly held corporation who is an Appellant in this appeal.

# TABLE OF CONTENTS

**Page**

Table of Authorities     6

**CORPORATE DISCLOSURE STATEMENT**     2

**I.    INTRODUCTION**     11

**II.    STATEMENT OF JURISDICTION**     16

      A.    The Basis for the District Court's Jurisdiction     16

      B.    The Basis for the Court of Appeal's Jurisdiction     16

      C.    Timely Appeal from the District Court's Judgment     17

**III.   ISSUES PRESENTED FOR REVIEW**     17

**IV.   STATEMENT OF THE CASE**     18

      A.    Statement of Facts     18

      B.    The Proceedings Below     22

## TABLE OF CONTENTS
### (continued)

**Page**

V.   SUMMARY OF THE ARGUMENT                          24

VI.  STANDARDS OF REVIEW                              26

VII. DISCUSSION                                       27

  A.  The District Court Erred As a Matter of Law When
      It Refused to Apply the Statutes to Pitt's Policy,
      Improperly Granting Summary Judgment on
      That Basis on All of Plaintiff's Claims          27

      1.  The Statutes' Remedial Purpose
          and Application                              27

      2.  The Statutes Apply to Pitt's Policy          33

      3.  The Renewal Doctrine Has Repeatedly
          Been Recognized by Courts in this Circuit    42

  B.  Tower Also Failed to Comply With Illinois Law
      in Its Termination of Pitt's Policy              51

# TABLE OF CONTENTS
## (continued)

**Page**

**VIII. CONCLUSION**      55

**CERTIFICATE OF COMPLIANCE**      56

**STATEMENT OF RELATED CASES**      57

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adickes v. S.H Kress & Co.,*
    398 U.S. 144 (1970)                                    26

*Argonaut Ins. Co. v. Colonial Ins. Co.,*
    70 Cal.App.3d 608 (1977)                              42

*Arizona Electric Power Cooperative, Inc. v. Berkeley,*
    59 F.3d 988 (9th Cir.1995)                        42, 49

*Ball v. Cal. State Auto. Assn. Inter-Ins. Bureau,*
    201 Cal.App.2d 85 (1962)                          47, 48

*Bentley v. United of Omaha Life Ins. Co.,*
    371 F.Supp.3d 723 (C.D. Cal. Feb. 21, 2019)     39, 44, 46

*Cal-Farm Ins. Co. v. Deukmejian,*
    48 Cal.3d 805 (1989)                                  33

*Cal-Farm Ins. Cos. v. Fireman's Fund Am. Ins. Co.,*
    25 Cal.App.3d 1063 (1972)                             41

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)                                   26

*Cerone v. Reliance Standard Life Ins. Co.,*
    9 F.Supp.3d 1145 (S.D. Cal. 2014)                    46

*Clarin Corp. v. Mass. Gen. Life Ins. Co.,*
    44 F.3d 471 (7th Cir. 1994)                          51

# TABLE OF AUTHORITIES
## (continued)

**Page**

## Cases (continued)

*Clark v. Transamerica Life Ins. Co.*,
  2023 WL 3143689 (9th Cir. April 28, 2023)     46, 47, 49

*Close v. Sotheby's, Inc.*,
  894 F.3d 1061 (9th Cir. 2018)     47, 48

*Elmore v. Hartford Life & Accident Ins. Co.*,
  2023 WL 3299990 (9th Cir. May 8, 2023)     46, 47, 49

*Green v. City & County of San Francisco*,
  751 F.3d 1039 (9th Cir. 2014)     18

*Harwick v. AXA Equitable Life Ins. Co.*,
  2020 WL 7698367 (N.D. Ill. Dec. 27, 2020)     52, 54

*Kotlar v. Hartford Fire Ins. Co.*,
  83 Cal.App.4th 1116 (2000)     31

*Lee v. Industrial Indemnity Co.*,
  177 Cal.App.3d 921 (1986)     32

*Mackey v. Bristol West Ins. Services of CA, Inc.*,
  105 Cal.App.4th 1247 (2003)     31

*McHugh v. Protective Life Ins. Co.*,
  12 Cal.5th 213 (2021)     *passim*

*Mercury Ins. Group v. Superior Court*,
  19 Cal.4th 332 (1988)     48

# TABLE OF AUTHORITIES
## (continued)

**Page**

## Cases (continued)

*Minkler v. Safeco Ins. Co.,*
    561 F.3d 1033 (9th Cir. 2009) .......................................... 50

*Modglin v. State Farm Mut. Auto. Ins. Co.*,
    273 Cal.App.2d 693 (1969) .......................................... *passim*

*Moriarty v. American General Life Insurance Company*,
    2020 WL 13540770 (S.D. Cal. October 1, 2020) ........ 39, 45, 46

*National Auto. & Cas. Ins. Co. v. Calif. Cas. Ins. Co.*,
    139 Cal.App.3d 336 (1983) .......................................... 32

*People v. Overstreet,*
    42 Cal.3d 891 (1986) .......................................... 34, 50

*Robinson v. State Farm Mut. Auto. Ins. Co.*,
    23 Cal.App.3d 953 (1972) .......................................... 42

*Siino v. Foresters Life Ins. & Annuity Co.*,
    2020 WL 8410449 (N.D. Cal. Sept. 1, 2020) ........ 39, 45, 46

*Strategic Diversity, Inc. v. Alchemix Corp.*,
    666 F.3d 1197 (9th Cir. 2012) .......................................... 26

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) .......................................... *passim*

*Thomas v. State Farm Ins. Co.*,
    424 F.Supp.3d 1018 (S.D. Cal. Dec. 10, 2019) ........ 39, 43, 44

## TABLE OF AUTHORITIES
### (continued)

**Page**

**Cases (continued)**

*Thomas* v. *State Farm Life Ins. Co.*,
    2021 WL 4596286 (9th Cir. Oct. 6, 2021)           44

*Wegrzyn v. Jackson Nat. Life Ins. Co.,*
    2011 WL 2672510 (N.D. Ill. July 8, 2011)         54

## TABLE OF AUTHORITIES
### (continued)

**Page**

**Codes, Statutes & Rules**

California Insurance Code

§ 10113.71 — *passim*

§ 10113.72 — *passim*

Illinois Insurance Code

215 ILCS 5/234 — 51-54

28 U.S.C.

§ 1291 — 16

§ 1332 — 16

**Other**

2-7 Appleman on Insurance Law & Practice Archive, § 7.1 — 32

Plitt, *et al., Couch on Insurance,* § 29:43 (3d ed. 2010) — 40

Plaintiff/Appellant, SUSAN PITT, hereby files this Opening Brief challenging the District Court's Judgment, dated June 5, 2023, entered after granting summary judgment in favor of Defendant/Appellee, METROPOLITAN TOWER LIFE INSURANCE CO. ("Tower") in this insurance coverage dispute.

## I.

## <u>INTRODUCTION</u>

In 2013, the California Legislature enacted Insurance Code sections 10113.71 and 10113.72 (collectively, "the Statutes") to provide Californians with consumers protections against inadvertent lapses in their life insurance coverage. Before those statutes, notice and grace periods controlling life insurance policies varied significantly, subject to divergent and often conflicting terms contained in individual policies. In response, the Statutes created a single, unified pretermination notice scheme to which all insurers must strictly adhere before they can lawfully terminate a life insurance policy in California, including the following provisions: (1) a "60-Day Grace Period Provision," requiring a grace period of not less than 60 days from the premium due date (§ 10113.71, subd. (a)); (2) a "Notice Within 30 Days of Nonpayment

Provision," mandating that insurers must provide notice of pending lapse and termination "within 30 days after a premium is due and unpaid" (§ 10113.71, subd. (b)(3); § 10113.72, subd. (c)); (3) a "Notice At Least 30 Days Before Effective Date of Termination Provision," requiring insurers to provide notice of pending lapse and termination at least 30 days prior to the effective date of lapse or termination (§ 10113.71, subd. (b)(1); § 10113.72, subd. (c)); and (4) a "Third-Party Designation Notice Provision," requiring insurers to provide applicants and existing policyholders with the right to designate at least one person, in addition to that applicant or policyholder, to receive notices of lapse or termination of policies for nonpayment of premium, and the annual right to change that designation (§ 10113.72, subd. (a)).

Following their passage, several life insurers doing business in California (including Tower) took the ill-advised position that the Statutes did not apply to policies issued and delivered *before* that Statutes' effective date of January 1, 2013. However, the California Supreme Court in *McHugh v. Protective Life Ins. Co.*, 12 Cal.5th 213 (2021) rejected that position, holding instead that the Statutes applied to all existing life insurance policies in force in California at the time of

the Statutes' passage. Further recognizing that the Statutes represented a proper exercise of California's police power to regulate in force insurance contracts in California through subsequent amendments to the Insurance Code, the *McHugh* court reasoned that the Statutes: (1) promote continuity in the insuring arrangement; (2) place the burden of strict compliance with the Statutes on insurers, the parties who stand to benefit financially from early policy terminations; (3) create standardized rules governing all life insurance policies in force in California; and (4) help prevent payment disputes, which typically arise after policyholders have died.

The central question raised in this appeal is whether the Statutes apply to an annually renewable 20-year term life insurance policy Tower originally issued and delivered in 2003 to its insured, Michael A. Pitt ("Pitt"), who at that time was living in Illinois. Subsequently, in 2014, Pitt moved to California and his policy with Tower was thereafter renewed several times in California until Pitt's death in 2018. By its own terms, that policy (entitled by Tower as a "Level Benefit Term Life Insurance Annually Renewable to Age 95") was renewable yearly by Pitt paying an annual level premium to Tower for prospective coverage

until the next annual premium was due for the following renewal period. Those one-year renewals of that policy would therefore continue throughout the lifespan of that 20-year term policy.

Following Pitt's death, Pitt's beneficiary and wife (Susan Pitt) sought the policy's benefits from Tower. Tower refused, claiming that the policy had previously lapsed for nonpayment. Susan Pitt then filed the below action, alleging that Tower had, among other things, violated the Statutes and breached its insurance contract when it failed to provide Pitt with the pretermination notice the Statutes require. Under California's well-established "renewal doctrine," Susan Pitt asserted that when Pitt's policy was renewed several times after his move from Illinois, those renewals in California included the commensurate obligation to comply with California law, including the Statutes. That obligation was reinforced by language in Tower's policy itself which anticipated that insureds like Pitt might move after a policy's original issuance and required Tower to amend the policy if doing so would give Pitt the "benefit" of such an advantageous "state statute, rule or regulation."

But when Susan Pitt prosecuted those claims on her own behalf in the District Court – and further sought certification of those same claims on behalf of a putative class of insureds similarly denied policy benefits by Tower's uniform refusal to comply with the Statutes – the District Court denied class certification and granted summary judgment to Tower. Its central rationale for doing so was the same: the Statutes do not apply to Pitt's term life insurance policy because that policy was originally issued by Tower in Illinois, irrespective of Tower subsequently renewing and administering that policy in California for several years until Pitt died.

Susan Pitt now appeals, raising two fundamental grounds for reversal of the District Court's Judgment. First, she explains how (A) the District Court erred as a matter of law when it refused to apply the Statutes to Pitt's policy, improperly granting summary judgment on that basis on Pitt's claims for breach of contract, unfair competition, bad faith, elder abuse, and declaratory relief. And second, Susan Pitt demonstrates how (B) alternatively, Tower also failed to comply with Illinois law in its termination of Pitt's policy. Accordingly, Susan Pitt respectfully requests this Court to find that the Statutes apply as a

matter of law to Pitt's policy and to reverse the District Court's Judgment.

## II.

## STATEMENT OF JURISDICTION

### A.   The Basis for the District Court's Jurisdiction.

Susan Pitt's operative Class Action Complaint invoked the District Court's original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act.  (10-ER-2379.)[1]

### B.   The Basis for the Court of Appeal's Jurisdiction.

The District Court entered Judgment following its grant of Tower's Motion for Summary Judgment, which disposed of all claims in the lawsuit.  (1-ER-2.)  As a result, that Judgment is final and appealable, and this Court has jurisdiction to review it under 28 U.S.C. § 1291.

---

[1] All facts in this brief are supported by reference to the Appellant's Excerpts of Record, abbreviated as:  ([volume]-ER-[page]).

## C.   Timely Appeal from the District Court's Judgment.

The District Court entered Judgment on June 5, 2023. (1-ER-2.) Susan Pitt filed a Notice of Appeal on June 26, 2023 from that Judgment. (10-ER-2425.) That appeal is timely under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

## III.

## ISSUES PRESENTED FOR REVIEW

1.   Do Insurance Code sections 10113.71 and 10113.72 (collectively, "the Statutes") apply to annually renewing life insurance policies originally issued in another state, but subsequently renewed and administered in California?

2.   Did the terms of Pitt's annually renewing life insurance policy with Tower separately require Tower to incorporate and apply the Statutes into Pitt's policy and to provide him with conforming notices?

3.   Alternatively, did Tower violate Illinois law in the manner in which it noticed and terminated Pitt's policy?

As the answer to all of those questions is invariably "yes," this Court should reverse the District Court's summary judgment Order and resulting Judgment.

## IV.

## STATEMENT OF THE CASE

The critical facts forming the crux of the parties' dispute are largely undisputed, presenting purely legal issues for this Court's review. However, because the District Court decided the case on summary judgment, any remaining disputed facts must be "viewed in favor of the nonmoving party." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1045 (9th Cir. 2014). Mindful of that relevant standard, Susan Pitt summarizes those material facts as follows.

## A. Statement of Facts.

In 2003, Pitt purchased from Tower a "Level Benefit Term Life Insurance Annually Renewable to Age 95" policy in the amount of $2 million ("the Policy"). (3-ER-530; 9-ER-2071-2089.) Pitt's wife, Susan Pitt, was the named beneficiary under that policy. (9-ER-2082.) As previewed above, the Policy renewed every year under the express

provisions of a "Renewal Privilege" provision contained in Tower's insurance contract. (9-ER-2077.) The Policy also contained a 31-day grace period and a further contractual promise by Tower to send a default notice if a payment was not received on the premium due date. (9-ER-2075.)

From 2003 until 2014 the Policy renewed in Illinois, where the Pitts resided at that time. (3-ER-541-542; 9-ER-2091.) In 2014, the Pitts permanently moved to California. (*Id*.) They notified Tower of their change of address and continued to pay premiums in California, with Tower thereafter communicating with the Pitts at their California address. (*Id.;* 3-ER 455-461, 463-466; 9-ER-2120-2131.)

Following the Pitts' move, from 2014 until January 6, 2016, the Policy renewed in California. (3-ER-541.) Specifically, in October of 2015, Pitt paid his premium in California, again renewing the Policy until January 6, 2016. (3-ER 464.) In sum, Pitt received two annual statements sent by Tower to his home in California, both of which confirmed that the Policy was in force in California. (3-ER-455-459.)

19

Sometime around the fall of 2015, Pitt began to experience debilitating symptoms which would eventually be diagnosed as Amyotrophic Lateral Sclerosis or ALS. (3-ER-464.) In December of 2015, Tower claims to have mailed a Notice of Payment due to Pitt at his California residence stating that his next premium payment was due on January 6, 2016. (9-ER-2120-2121.) Notably, that notice was undated. (*Id.*)

On January 6, 2016, Tower did not receive a premium payment from Pitt. (3-ER-464.) Tower thereafter claimed it mailed a further "Special Courtesy Offer" to Pitt on February 8, 2016 declaring that the Policy's "grace period had expired" and indicating the offer made in the notice "did not change the grace period." (9-ER-2125-2126.) That notice offered to continue coverage based on certain conditions if payment was received from Pitt by February 27, 2016. (*Id.*)

On March 15, 2016, Tower mailed Pitt a notice of termination letter, claiming "[y]our policy lapsed because the premium due on January 6, 2016 has not been paid." (9-ER-2130.) That letter did not say the Policy terminated on March 15, 2016. Instead, it explicitly stated, "the policy expired [past tense] at the end of its grace period and

is now without value," confirming Tower terminated the Policy on February 8, 2016, only 31 days from the premium due date of January 6, 2016, and without any prior lapse notice required by the Policy itself. (*Id.*)

By its own terms, the Policy allowed three years to seek reinstatement upon Tower's approval. (9-ER-2076.) Tower never advised Pitt that seeking reinstatement quickly would improve the chances of receiving that approval. (3-ER-489.) In September of 2016, Pitt applied for reinstatement and tendered the Policy's entire annual premium. (3-ER-465, 480, 482-487.) That premium was held by Tower until it subsequently rejected Pitt's reinstatement request in February of 2017. (3-ER-465, 489, 491, 494.) Pitt then retained counsel to seek on his behalf reconsideration of the Policy's termination, as well as Tower's denial of reinstatement, on the grounds that Pitt did not receive a compliant lapse notice. (3-ER-496-502.)

In May of 2018, Pitt succumbed to his ALS and passed away. (3-ER-465.) Three months later, in August of 2018, Susan Pitt, as the Policy's named beneficiary, made a claim for the policy's death benefits. (9-ER-2145-2147.) Tower quickly denied that request on August 16,

2018, asserting that the Policy was "had no value" on the date of Pitt's death.  (9-ER-2149.)

## B.   <u>The Proceedings Below.</u>

On October 30, 2018, Susan Pitt (hereinafter "Plaintiff") filed an action against Tower and its related insurance companies in the District Court for the Northern District of California.  (*Pitt v. Gen. Am. Life Ins. Co., et al.,* No. 18-cv-6609-YGR.)  Tower and other defendants challenged venue and Tower moved to transfer the action to New York.  (1-ER-5.)  After the Northern District granted defense motions to dismiss for lack of personal jurisdiction and improper venue, and dismissed the action without prejudice, on April 10, 2020, Plaintiff filed her operative Class Action Complaint in the Southern District.  (10-ER-2374-2424.)

That Complaint alleged six causes of action:  (1) declaratory relief under California Civil Code §§ 1060, *et seq.*; (ii) declaratory relief under 28 U.S.C. § 2201, *et seq.*; (iii) breach of contract; (iv) bad faith; (v) unfair competition under California Business and Professions Code §§ 17200, *et seq.*; and (vi) financial elder abuse.  (10-ER-2374-2424.)  In her prayer for relief, Plaintiff also sought an "injunction to issue against Defendant

stopping and remedying the ongoing violation of the Statutes, including public injunctive relief." (10-ER-2414-2415.)

On October 21, 2021, Plaintiff filed a Motion for Class Certification. (10-ER-2235-2335.) Following Tower's opposition (3-ER-593 – 9-ER-2023) and a further reply filed by Plaintiff (3-ER-562-582), the District Court later denied that certification motion on December 1, 2022. (1-ER-2021.)

In the interim, on December 3, 2021, Tower filed a motion for summary judgment, seeking dismissal of all of Plaintiff's claims. (9-ER-2032.) Plaintiff opposed that motion (3-ER-414), followed by Tower's reply (2-ER-322).

On February 18, 2022, Plaintiff filed a Motion for Partial Summary Judgment on her breach of contract and declaratory judgment claims. (3-ER-344.) Tower thereafter opposed that motion (2-ER-242), and Plaintiff further replied (2-ER-144).

While those motions were fully briefed and pending before the District Court, on January 5, 2023 the court granted the parties' joint motion for a temporary stay of the case in light of the potentially dispositive issues pending before this Court in *Elmore v. Hartford Life*

*& Acc. Ins. Co.,* No. 20-55118.  (2-ER-64.)  On May 9, 2023, the District Court lifted that stay after the Ninth Circuit issued an unpublished Memorandum decision in *Elmore*.  (2-ER-55.)  Thereafter, the District Court directed the parties to submit simultaneous briefing concerning the impact of the *Elmore* decision, if any, on their pending summary judgment motions.  (*Id.*)  On May 23, 2023, the parties submitted supplemental briefing on that issue.  (2-ER-48 (Plaintiff's brief); 2-ER-41 (Tower's brief).)

Subsequently, in a consolidated Order issued on June 5, 2023, the District Court granted Tower's summary judgment motion and denied Plaintiff's partial summary judgment motion.  (1-ER-3-20.)  As that ruling disposed of all of Plaintiff's claims, Judgment was thereafter entered on that same date in favor of Tower.  (1-ER-2.)  Plaintiff's timely appeal from that Judgment then followed.  (10-ER-2425.)

## V.

## <u>SUMMARY OF THE ARGUMENT</u>

As previewed above – and as acknowledged by the District Court in its orders both denying class certification and granting Tower summary judgment – the Plaintiff's central contention is that Tower

systematically refused to apply the Statutes and thereby violated their mandatory notice and termination requirements when it terminated Pitt's life insurance policy and the policies of the putative class. By their express terms, the Statutes command that policy terminations in California "shall not be effective" absent compliance with their notice and termination provisions. That compliance is strict, placing the burden on insurers like Tower to assiduously adhere to those notice and termination requirements as the party that routinely administers those policies, and that stands to benefit financially from early policy terminations. Proper application of the Statutes to Pitt's policy results in that policy remaining in force at the time of Pitt's death, thereby obligating Tower to pay the policy's death benefits to Pitt's wife, the Plaintiff.

Alternatively, Tower failed to comply with the notice and termination provisions required by Illinois law. Even though Plaintiff maintains that the Statutes applied to Pitt's policy after it was renewed several times in California, Illinois law does not rehabilitate Tower's improper notice and termination procedures either, but further confirms that Pitt's policy remained in force at the time of his death.

# VI.

## STANDARDS OF REVIEW

This Court reviews *de novo* the District Court's grant of summary judgment. *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (internal quotations omitted).

The movant on summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H Kress & Co.*, 398 U.S. 144, 159-160 (1970). On the other hand, if the movant meets that initial burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56, subd. (e)).

# VII.

# DISCUSSION

**A.  The District Court Erred As a Matter of Law When It Refused to Apply the Statutes to Pitt's Policy, Improperly Granting Summary Judgment on That Basis on All of Plaintiff's Claims.**

## 1.  The Statutes' Remedial Purpose and Application.

In 2011, the State of California recognized a serious problem with insurance policyholders unintentionally losing important life insurance coverage due to inadvertent failures to pay policy premiums.  Often decades of premium investments in those policies were lost when a single payment was missed and those policies were terminated as a result of the mental or physical decline of elderly or disabled policyholders.  *McHugh*, 12 Cal.5th at 225, 240-241.

To address those issues, in 2012 the California Legislature passed Assembly Bill 1747 ("AB 1747" – 2011-2012 Reg. Sess.), adding sections 10113.71 and 10113.72 to the Insurance Code on January 1, 2013. *McHugh*, 12 Cal.5th at 225, 240-241.  As summarized by the California Supreme Court in *McHugh,* 12 Cal.5th at 225-226, section 10113.71 established a 60-day grace period after a missed premium.  Subdivision

(a) states: "Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period." Cal. Ins. Code § 10113.71, subd. (a).[2] Section 10113.71 also requires insurers to provide policyowners, as well as persons designated by policyholders, with notice at least 30 days before terminating a policy due to a payment lapse. § 10113.71, subd. (b)(1). To that end, subdivision (b)(1) states: "A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium." *Id*. And subdivision (b)(3) of section 10113.71mandates that the "[n]otice shall be given to the policy owner and to the designee by first-class United States mail

---

[2] Further statutory references are to the California Insurance Code unless otherwise indicated.

within 30 days after a premium is due and unpaid." § 10113.71, subd. (b)(3); *McHugh,* 12 Cal.5th at 225-226.

Section 10113.72 further requires life insurance policies to grant applicants and policyholders the right to designate at least one other person to receive a notice of an overdue premium and impending lapse or termination of the policy. *McHugh*, 12 Cal.5th at 226. In subdivision (a), section 10113.72 provides that "[a]n individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium." § 10113.72, subd. (a). That subdivision also explains that "the insurer shall provide each applicant with a form to make the designation," and that this form must provide the applicant with the opportunity "to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium." *Id*. Subdivision (b) of section 10113.72 further provides that insurers "shall notify the policy owner annually of the right to change the written designation or designate one or more persons," and that

policy owners may elect to change the designation more often if they choose to do so. § 10113.72, subd. (b). Finally, subdivision (c) of 10113.72 prevents an insurer from ending a policy for an unpaid premium without giving policy owners at least 30 days' notice. To that end, it mandates that no policy "shall lapse or be terminated" for an unpaid premium "unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a) . . . ." § 10113.72, subd. (c); *McHugh,* 12 Cal.5th at 226.

Through those provisions, the Statutes embody well-settled public policies placing the affirmative burden on insurers to provide proper notice of termination, and to strictly adhere to the Statutes' mandates, before policy terminations in California are legally effective. Indeed, the *McHugh* court recognized the mandatory nature of sections 10113.71 and 10113.72 and how compliance by insurers was strictly required under their textual demand. *McHugh,* 12 Cal.5th at 238-239 (observing how, for example, the use of "shall" in 10113.71, subd. (a) "represents a mandatory directive for all policies (*i.e.,* each policy must be read to contain a grace period)"; see also section 10113.71, subd.

(b)(1) which states broadly that notice of pending lapse and termination "shall not be effective unless mailed by the insurer" to the policyholder, a designee, and a known assignee "at least 30 days prior to the effective date of termination"; and section 10113.72, subd. (c), which similarly provides that "[n]o individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer" gives the requisite 30-day-minimum notice, and that "[n]otice shall be given . . . within 30 days after a premium is due and unpaid").

The Statutes' built-in requirement of strict compliance by insurers not only advances their core objectives, but is also consistent with long-established law which the California Legislature is presumed to know about when it passed the Statutes. See, *e.g., Mackey v. Bristol West Ins. Services of CA, Inc.,* 105 Cal.App.4th 1247, 1258 (2003) (confirming that "[t]ermination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation," and that absent strict compliance in notices of cancellation, those notices are deemed "void" and "the policy remains in effect even if the premiums are not paid"; *Kotlar v. Hartford Fire Ins. Co.,* 83 Cal.App.4th 1116, 1121-1122 (2000) (failure to provide proper notice of cancellation

nullified the cancellation, leaving the policy's coverage in place); *Lee v. Industrial Indemnity Co.*, 177 Cal.App.3d 921, 924-925 (1986) (strict compliance with the terms of contractual requirements for notice of cancellation, or a statutory provision governing cancellation, "is essential to effect a valid policy cancellation"); *National Auto. & Casualty Ins. Co. v. California Casualty Ins. Co.*, 139 Cal.App.3d 336, 341 (1983) (policy remained "in force" because insurer failed to strictly comply with statutorily imposed notice requirements before cancellation of policy could be affected). Under the Statutes and those strict compliance standards, non-conforming notices and terminations are deemed "ineffective," leaving existing policies in force. See also 2-7 Appleman on Insurance Law & Practice Archive, § 7.1 (confirming that where insurers attempt to cancel policies for nonpayment of premiums thereby working the forfeiture of policy benefits, a strict standard requiring absolute compliance with policy provisions and the notice of cancellation requirements of all applicable statutes, is imposed on insurers).

Through those well-settled requirements, *McHugh* further confirmed that the Statutes were intended by the Legislature to "create

a single, unified pretermination notice scheme" for all life insurance policies existing in California when the Statutes became effective. *McHugh,* 12 Cal.5th at 240-241. Indeed, that new statutory scheme did not "rewrite" existing policies, as several insurers argued. *Id.* at 230-231. Instead, they "merely impose[d] additional rules on insurers as a condition of doing business in California – rules that govern insurers' conduct post-enactment when, in the future, one of their policy owners misses a premium payment." *Id.* Such rules were particularly appropriate given the "highly regulated" nature of the insurance industry in California where "further regulation" of existing policies through amendments to the Insurance Code "can reasonably be anticipated." *Id.* at 233, citing *Cal-Farm Ins. Co. v. Deukmejian,* 48 Cal.3d 805, 830 (1989).

## 2. The Statutes Apply to Pitt's Policy.

Notably, passage of the Statutes was supported not only by numerous consumer protection groups, but also by the insurance industry and the California Department of Insurance ("DOI"). *McHugh,* 12 Cal.5th at 240-243. However, after their passage, some insurers (including Tower) took the position that the Statutes (and in particular,

their provisions extending grace and notice periods) were not intended to apply to existing in force policies issued before January 1, 2013. As explained above, the *McHugh* decision roundly rejected that argument, reiterating that the Statutes applied "*to all life insurance policies in force* when these two sections went into effect, regardless of when the policies were originally issued." *McHugh,* 12 Cal.5th at 220 (emph. added). It further underscored that such pretermination and notice requirements "impose additional rules on *insurers as a condition of doing business in California*," and "the new rules simply updated how the regulatory system governing life insurance terminations treats *all* policies going forward." *Id*. at 231, 235 (emph. added).

Stripped by *McHugh* of its primary argument that the Statutes apply only to policies issued after their enactment, Tower devised a new roadblock: it would apply the Statutes only to policies originally issued in California. But doing so further conflicted with the "renewal doctrine," an established legal theory in California which the Legislature was also presumed to know about when it passed the Statutes. See *People v. Overstreet,* 42 Cal.3d 891, 897 (1986) (confirming that "the Legislature is deemed to be aware of existing laws

and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them"). By the Statutes' effective date in 2013, the renewal doctrine was embedded in California law. See, *e.g., Borders v. Great Falls Yosemite Ins. Co.*, 72 Cal.App.3d 86, 94-95 (1977) (explaining the nature of insurance renewals and collecting cases); *Modglin v. State Farm Mut. Auto. Ins. Co.*, 273 Cal.App.2d 693, 700 (1969) (holding that an interim change in the Insurance Code requiring mandatory coverages applied when a policy was subsequently renewed in California).

Specifically, in *Modglin*, the policyholder purchased an automobile policy in Arizona which did not contain uninsured motorist coverage. *Modglin,* 273 Cal.App.2d at 695. The policyholder then subsequently moved to California and renewed that automobile policy in California by paying the policy's premium in California. *Id*. at 696. The policyholder was subsequently killed in an automobile accident with an uninsured motorist. *Id*. at 696-97. At that time, California law required that all policies "issued and delivered" in California contain uninsured motorist coverage. *Id*. at 697-698. Like Tower in this case,

the insurance company in *Modglin* denied coverage claiming the renewal of the policy in California did not constitute "issuance" or "delivery" of a policy in California and therefore was not subject to interim changes in the Insurance Code. *Id*. at 699. The Court of Appeal disagreed, reasoning:

> [I]f we were to render the construction to the statute which the defendant submits and formulate a rule that the statute only applies to new policies, as distinguished from renewals of existing policies, the purpose of the Uninsured Motorist Law could be circumvented by the mere expedient of insurance carriers renewing their policies instead of issuing new ones. The Legislature never intended such a result.

*Id*. at 700.

The same conclusion is compelled here. As *McHugh* makes clear, the Legislature intended the Statutes to apply to *all existing policies* in California, and imposed their requirements on insurers as a condition of doing business in that state. *McHugh*, 12 Cal.5th at 230-231. *McHugh* further reasoned that the Statutes protect *all* existing California policyholders, irrespective of when their policies were issued. Such a uniform application of the Statutes avoided the confusing and inconsistent alternative proposed by the insurance industry, where

policies would be subject to differing notice and termination regimens simply by the expedient of *when* those policies were issued. *McHugh,* 12 Cal.5th at 242.

Similarly, the expedient of *where* policies are originally issued is equally arbitrary and would also thwart the Statutes' consumer protection goals. As *Modglin* correctly concluded, when policies are renewed in California and such renewals are permitted by insurers, interim changes in the Insurance Code apply equally to those renewed policies, thereby ensuring regulatory consistency for all California policyholders. *Modglin,* 273 Cal.App.2d at 700. Consequently, when Pitt renewed the Policy in California starting in 2014, it incorporated interim changes in the Insurance Code intended to regulate all existing life insurance policies in California, including the Statutes. As in *Modglin*, a contrary holding would wreak havoc on the Statutes' "uniform pretermination scheme," imposing one set of rules for policies originally issued in California, and another on policies issued elsewhere but subsequently renewed in California. But see *McHugh,* 12 Cal.5th at 240-242 (rejecting a similar two-tiered notice and termination

scheme as being contrary to the Statutes' legislative intent and remedial purposes).

Moreover, failing to apply the Statutes to policies renewed in California would lead to a particularly absurd result in this case where the Policy expressly anticipates both annual policy renewals and the likelihood that policyholders may move to other jurisdictions with regulatory schemes different from the state of original issuance. As mentioned above, Pitt's policy was labeled by Tower as a "Level Benefit Term Life Insurance *Annually Renewable* to Age 95," meaning that it was renewable annually by Pitt paying a level premium to Tower for prospective coverage until the next annual premium was due for the following renewal period. It was anticipated by Tower that those one-year renewals of that policy would continue throughout its 20-year term pursuant to the Policy's express "Renewal Privilege," which specifically allowed Pitt to renew the Policy annually without proof of insurability. (9-ER-2077.) That same "Renewal Privilege" provision further directed that to renew the Policy, all Pitt had to do was "pay the proper premium shown on the premium billing notice," and that "[e]ach renewal will be for a term of one year and will begin when the preceding term ends."

(*Id*.)  That unilateral right to renew the Policy was also evidenced by a schedule of annual renewal premiums contained in the Policy, entitled "Policy's Schedule of *Renewal Premiums*.  (9-ER-2074 [emph. added].)

Consequently, the Policy was not repeatedly renewed by Pitt by happenstance.  Instead, *Tower specifically designed and drafted the Policy to renew annually* – 20 times over a 20-year period – by Pitt unilaterally paying the Policy's annual "renewal premium."  Notably, federal courts in this Circuit interpreting California appellate decisions have consistently concluded that annually renewable term life insurance policies – like the Policy in this case – are renewed at the time an annual premium is fully paid.  See *Thomas v. State Farm Ins. Co*., 424 F.Supp.3d 1018, 1027 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Ins. Co*., 371 F.Supp.3d 723, 735-736 (C.D. Cal. Feb. 21, 2019); *Siino v. Foresters Life Ins. & Annuity Co*., 2020 WL 8410449 at *6 (N.D. Cal. Sept. 1, 2020); and *Moriarty v. American General Life Insurance Company*, 2020 WL 13540770 at *3 (S.D. Cal. October 1, 2020).

The Policy additionally mandated compliance with California law. Consistent with the obvious foreseeability of policyholders relocating after a policy's original issuance, through its "Conformity with Statutes" provision, the Policy anticipated that the laws governing the Policy would also correspondingly change. (9-ER-2080.) In those circumstances, the Policy expressly required Tower to amend the Policy "[i]f any provision in this policy is in conflict with the laws of the state which govern this policy," or if such an amendment would give the policyholder or beneficiary the "benefit" of any "state statute, rule or regulation." (*Id*.) In those circumstances, the Policy mandated that any conflicting provisions "will be deemed to be amended to conform with such laws." (*Id*.; see also Plitt, *et al., Couch on Insurance,* § 29:43 (3d ed. 2010)) (explaining that policies containing that same language become subject to new statutory provisions, and an amendment of the insurance contract is automatically brought about).

Obviously, the Policy's provisions providing for only a 31-day grace period would be a provision "in conflict" with the Statutes, especially where: (1) Pitt lived in, paid premiums from, and repeatedly renewed the Policy in California; (2) Tower is not an Illinois company and was

"doing business" in California by performing and administering Pitt's insurance contract within California, including sending notices to Pitt in California, allowing Pitt to renew the Policy in California, and accepting premiums paid by Pitt in California for those policy renewals; (3) Pitt passed away in California, the Plaintiff lives in California, and policy benefits were to be paid by Tower in California.

In short, the Policy's "Renewal Privilege" language (defining the annually renewing nature of the Policy itself), coupled with the Policy's "Conformity with Statutes" language (automatically amending the Policy where its provisions conflict with the laws of the state governing the Policy, or where such an amendment would give a policyholder the "benefit" of a "state statute or regulation") all support the conclusion that the Policy was renewed by Pitt in California at a time when the Statutes conflicted with the notice and termination provisions in the Policy. By operation of the Statutes (and their broad remedial scope, as construed by *McHugh*), *and* the Policy's language itself, the Policy was renewed in California and therefore controlled by the Statutes. *Modglin,* 273 Cal.App.2d at 700; see also *Cal-Farm Ins. Cos. v. Fireman's Fund Am. Ins. Co.*, 25 Cal.App.3d 1063, 1071 (1972) (holding

that where "there was a conflict between the policy provision and the statute, [] the effect of our holding is to automatically amend the policy provision to conform to the requirements of the statute").

### 3. The Renewal Doctrine Has Repeatedly Been Recognized by Courts in this Circuit.

When applying state substantive law, the role of the federal courts is to follow that state's precedent and, if necessary, to predict how the state's highest court would decide an unsettled issue. (*Arizona Electric Power Cooperative, Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir.1995). *Modglin's* articulation of the renewal doctrine has been repeatedly cited with approval by the Courts of Appeal in California. See, *e.g., Robinson v. State Farm Mut. Auto. Ins. Co.*, 23 Cal.App.3d 953, 960 (1972) (confirming that "*Modglin* stands for the proposition that an automobile policy, wherever originally issued, must conform in its coverage to California law when it is renewed after the insured has become a resident of California . . . ."); *Argonaut Ins. Co. v. Colonial Ins. Co*., 70 Cal.App.3d 608, 619-620 (1977) (citing *Modglin* and applying the renewal doctrine to determine primary coverage between several insurers).

Similarly, this Court previously addressed the viability of *Modglin's* renewal doctrine in *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917 (9th Cir. 2012) when construing the terms of a long-term disability policy. In doing so, the Court cited *Modglin* with approval, embracing the core function of the renewal doctrine as crystalized in *Modglin*: "[e]ach renewal incorporates any changes in the law that occurred prior to the renewal." *Stephan,* 697 F.3d at 927, citing *Modglin,* 273 Cal.App.2d at 700. On that basis, *Stephan* further confirmed that "[t]he law in effect at the time of renewal of a policy governs the policy even if that law is subsequently changed or repealed." *Id*. No other reported decision in this Circuit has since questioned the renewal doctrine as articulated in *Modglin*, or as further accepted by this Court in *Stephan*.

It is further notable that several District Court decisions in this Circuit have since followed *Stephan* and equally adopted *Modglin* and the renewal doctrine to conclude that the same Statutes at issue in this case apply to annually renewing term life insurance policies, like Pitt's policy with Tower. For example, in *Thomas,* 424 F.Supp.3d at 1025-1028, the District Court for the Southern District (Hon. Cynthia

Bashant) held that because "[e]ach [policy] renewal incorporates any changes in the law that occurred prior to the renewal," the Statutes were incorporated into the term life insurance policy in question when renewal premiums were paid. *Id.* (citing both *Stephan* and *Modglin*). Consistent with *McHugh,* that decision was subsequently affirmed by this Court in *Thomas* v. *State Farm Life Ins. Co.*, 2021 WL 4596286 (9th Cir. Oct. 6, 2021).

Similarly, in *Bentley,* 371 F.Supp.3d at 733-734, the District Court for the Central District (Hon. Dolly M. Gee) also followed *Stephan* and *Modglin,* and applied the renewal doctrine to conclude that renewal of a term life policy after the passage of the Statutes necessarily includes that interim change in law. In doing so, the *Bentley* court incorporated its previously detailed analysis of that issue from its two prior orders granting in part and denying in part the defendant-insurer's previous Motion to Dismiss (see *Bentley,* 2016 WL 7443189), and granting in part and denying in part the plaintiff's Motion for Class Certification (see *Bentley,* 2018 WL 3357458). All of those orders issued in *Bentley* reiterate and accept the renewal doctrine as discussed in both *Stephan*

and *Modglin*, and consistently held that the Statutes applied to term life insurance policies renewed after their passage. *Id.*

Additionally, in *Siino, supra,* 2020 WL 8410449 at *6-7, the District Court for the Northern District (Hon. Jon S. Tigar) also cited *Stephan* and *Modglin* with approval to conclude that the renewal doctrine applied the Statutes to a 20-year renewable term life insurance policy renewed when premiums were paid after the Statutes became effective. The *Siino* court did so rejecting the very distinctions Tower attempted to draw to *Modglin* in the District Court, finding that the use of "different terms" (*i.e.,* "renewal premium" or "premium") was immaterial, as "coverage continues if the insured pays a premium," and when that coverage is so renewed, interim changes in the law are also incorporated into that coverage under the renewal doctrine. *Id.* at *6-7.

And in *Moriarty,* 2020 WL 13540770, the District Court for the Southern District (Hon. Barry Ted Moskowitz) again followed *Stephan* and *Modglin* to conclude that "a renewed life insurance policy will incorporate existing law as of the date of renewal into its terms," including the Statutes into the term life policy at issue in that case. *Id.* at *3. In doing so, *Moriarty* was persuaded by the defined "annual

45

renewal premiums" required to be paid on every anniversary of the policy's issuance, just like the Policy in this case. *Id.* Moreover, the *Moriarty* court also found compelling that the *Thomas*, *Bentley*, and *Siino* decisions had all reached the same result based upon *Stephan* and *Modglin*, and similarly applied the Statutes based upon the renewal doctrine as settled law under *Stephan*. *Id.;* see also *Cerone v. Reliance Standard Life Ins. Co.*, 9 F.Supp.3d 1145, 1151-1152 (S.D. Cal. 2014) (also citing *Stephan* for the proposition that upon renewal, a life insurance policy incorporates by operation of law any relevant changes in the law).

Indeed, it is notable that the District Court's decision in this case appears to be an *outlier* in this Circuit, never bothering to mention this Court's precedent in *Stephan* or its uncontroversial adoption of *Modglin's* well-settled renewal doctrine. (1-ER-3-20.) Instead, the District Court cited and relied upon two unpublished Memorandum decisions of this Court – *Clark v. Transamerica Life Ins. Co.*, 2023 WL 3143689 and *Elmore v. Hartford Life & Accident Ins. Co.,* 2023 WL 3299990 – neither of which addressed *Stephan, Modglin,* or the renewal doctrine. (1-ER-8-9.) The District Court did so conceding that this

Court's summary dispositions in *Clark* and *Elmore* "did not explicitly analyze the renewal argument." (1-ER-8.) In truth, neither *Clark* nor *Elmore* analyzed that argument at all. As this Court knows well, it is not bound by a prior decision in this Circuit – especially an unpublished disposition – in which an issue was not even addressed by the panel deciding that case. See *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072-1073 (9th Cir. 2018).

Finally, the District Court resorted to *Ball v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 201 Cal.App.2d 85 (1962), another outlier decision which also does not support its reasoning. Notably, when the insurer in *McHugh* similarly relied upon *Ball* to argue that only policies issued and delivered *after* the Statutes' passage were subject to that law, the California Supreme Court in *McHugh* court rejected that core holding in *Ball*. See *McHugh*, 12 Cal.5th at 239, fn. 8 (criticizing *Ball* as failing to provide the type of "definitive judicial construction" of the phrase "issued or delivered" that the *McHugh* court could presume the Legislature knew about and sought to adopt when it passed the Statutes). In doing so, *McHugh* held (contrary to the very passage in *Ball* cited by the District Court in this case) that the terms "issued and

delivered" are not fixed but "can simultaneously refer to past as well as future events." *Id*. at 239. Thus, *Ball's* viability is more than questionable after *McHugh*, especially where *McHugh* construed the same "issued and delivered" language completely at-odds with *Ball*. Compare *McHugh,* 12 Cal.5th at 239 with *Ball,* 201 Cal.App.2d at 87.

*Ball* is distinguishable on another basis: it neither mentions nor analyzes the renewal doctrine. In that sense, *Ball* is a cul-de-sac decision which was obviated by the renewal doctrine as subsequently explained and articulated in *Modglin*. Indeed, had the renewal doctrine been raised and considered in *Ball,* it is fair to question whether the result in *Ball* would have been the same. Again, under both California and federal law, *Ball* cannot be viewed as authority for a proposition of law it never considered. *Close,* 894 F.3d at 1072-1073; *Mercury Ins. Group v. Superior Court,* 19 Cal.4th 332, 348 (1988).

In short, the District Court's summary judgment Order never mentioned this Court's controlling decision in *Stephan* of its embrace of *Modglin's* renewal doctrine, as well as numerous other California cases following *Modglin*. The District Court further summarily disagreed with four other District Court decisions which actually analyzed and

applied both *Stephan* and *Modglin,* without meaningfully distinguishing those cases or disputing their reasoning. (1-ER-11.) Instead, the District Court misplaced its reliance on *Elmore, Clark*, and *Ball*, three decisions (the former two, *unpublished*) which, again, never even considered *Stephan, Modglin,* or the renewal doctrine. In doing so, the District Court simply failed in its obligation to apply settled law from both this Circuit and from California.

Finally, it should be added that in the event the District Court believed the issue of renewal of term life insurance policies in California was somehow "unsettled," it should have expressly said as much and then analyzed all relevant intermediate appellate court decisions in California to predict how the California Supreme Court might decide that issue. *Arizona Electric,* 59 F.3d at 991. But it never made that predicate finding, nor did it opine how it believed the California Supreme Court might view that legal question.

Of course, had the District Court done so, it would have been obligated to consider how the *McHugh* court decided that the Statutes applied to *all* in force policies existing in California, irrespective of when they were originally issued and delivered. *McHugh,* 12 Cal.5th at

240-241. It would have further been obligated to consider that *McHugh* came to that conclusion rejecting the same two-tiered regulatory scheme that would follow if only policies originally issued and delivered in California were subject to the Statutes, and not those renewed in California. (*Id.* at 240, 242.) And it would have been forced to consider that *McHugh* found all in force insurance contracts in California to be "highly regulated" subject to further changes and revisions by later amendments to the Insurance Code. *Id.* at 231, 233 Those important rationales embraced by California's High Court in *McHugh* would apply equally to policies renewed in California, especially where *Modglin's* articulation of the renewal doctrine was known by the Legislature at the time it passed those Statutes. *Overstreet*, 42 Cal.3d at 897.[3]

This Court should reverse the District Court's decision as it failed to adhere to California law while also ignoring controlling precedent from this Circuit which has uniformly embraced the renewal doctrine. That reversal should extend to all of Plaintiff's causes of action, as the

---

[3] Of course, if this Court were somehow to conclude that the renewal doctrine remains unsettled in California law and indirectly, in this Circuit, it should certify that issue to the California Supreme Court, especially given that court's obvious interest in the operation of the Statutes in *McHugh*. See *Minkler v. Safeco Ins. Co.,* 561 F.3d 1033, 1035-1036 (9th Cir. 2009) (certifying a similar question of "exceptional importance" to insurers and insureds in California).

District Court used its flawed construction of the Statutes as the central basis to grant summary judgment in Tower's favor on all of those claims. (1-ER-12-20.)

## B. Tower Also Failed to Comply With Illinois Law in Its Termination of Pitt's Policy.

Illinois law (if it applies) mandates that an insurer cannot declare a policy forfeited or without value for six months from the due date unless a specifically-worded notice is mailed 15 to 45 days before the premium due date. See 215 ILCS 5/234. Under that section of the Illinois Insurance Code, that notice requires "a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy," and "shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void." *Id*.; see also *Clarin Corp. v. Mass. Gen. Life Ins. Co.*, 44 F.3d 471, 474 (7th Cir. 1994).

Tower's undated December 2015 notice sent to Pitt does not comply with those statutory requirements under Illinois law. (9-ER-2020-2021.) In particular, it nowhere states that "unless such premium

or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void," as section 234 requires. (*Id.*) Instead, that notice by Tower ambiguously states that "[i]f the premium is not paid by the end of its grace period (or if any previously due premium is in default) and you do not reinstate the policy, your rights under the policy will be limited to the right to any cash surrender value, reduced paid-up insurance or extended term insurance that the policy may provide." (*Id.*) This is hardly the "policy and all payments thereon will become *forfeited and void*" warning Illinois law requires. *Harwick v. AXA Equitable Life Ins. Co.*, 2020 WL 7698367 at *2-3 (N.D. Ill. Dec. 27, 2020) (confirming that stating that a policy may terminate does not comply with the requirements of section 234, which mandate instead that policyholders must receive prior notice that their policies will be "forfeited" or "void").

Citing *First Nat. Bank of Decatur v. Mut. Tr. Life Ins. Co.,* 122 Ill.2d 116, 122 (1988), the District Court conceded that Tower's notice did not comply with section 234 of the Illinois Insurance Code, but excused that noncompliance because Pitt's policy was "subject to forfeiture" after six months for non-payment. (1-ER-13-14 ["Here, Mr.

Pitt failed to pay his premium within six months of his payment due date on January 6, 2016. Under Illinois law, the Policy was therefore subject to forfeiture, regardless of any defects in the notice Tower sent to Mr. Pitt"].)

Of course, the obvious difference in the *First Nat. Bank* case was that the insurer there had not previously declared the policy in question "lapsed" and "without value" within that six-month statutory period, as did Tower's March 15, 2016 notice, indicating that Tower already terminated the Policy on February 8, 2016, 31 days from the premium due date of January 6, 2016. (9-ER-2130.) Thus, the fact that Pitt did not pay the premium in question within that six-month period is hardly surprising after Tower had already informed him that the Policy had lapsed and that application for reinstatement (at Tower's sole discretion) was his only option. (*Id.*) Importantly, that was not the factual scenario in *First Nat. Bank,* where the plaintiff (an assignee of the policy benefits) never received any notice within that six-month period. *First Nat. Bank,* 122 Ill.2d at 122.

Indeed, had Tower otherwise followed the requirements of section 234, it would have acted like the insurer in *First Nat. Bank* and not

terminated the policy for six months after failing to receive a premium payment on January 6, 2016. But Tower waited only 31 days, or until February 8, 2016, to terminate the Policy after failing to provide the pretermination notice required by Illinois law. As such, Tower violated Illinois law when it terminated Pitt's policy on February 8, 2016, well within section 234's six-month statutory period, but without otherwise complying with the rigorous pretermination notice section 234 requires. *Harwick,* 2020 WL 7698367 at *2-3; see also *Wegrzyn v. Jackson Nat. Life Ins. Co.,* 2011 WL 2672510 at *2-3 (similarly holding that if the notice requirements of section 234 are not satisfied, an insurer cannot lawfully terminate a policy within the six-month statutory period).

In short, Tower's March 15, 2016 notice, indicating that Tower already terminated the Policy on February 8, 2016, could only be compliant with Illinois law if it followed a notice adequately conforming with section 234. It did not. Moreover, Tower was not excused from that noncompliance because Pitt did not subsequently pay any premiums for six months after that February 8, 2016 termination date declared by Tower. The purpose of section 234 is to either provide compliant notice prior to termination or to force an insurer to wait at

least six months after a premium is due to terminate a policy. In this case, Tower did *neither*. Thus, even if Illinois law applies to this case, Tower failed to demonstrate that it was entitled to summary judgment. The District Court's conclusion to the contrary should further be reversed by this Court.

## VIII.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests this Court to reverse the District Court's Judgment after finding that the Statutes apply to Pitt's policy as a matter of law, or alternatively, that application of Illinois law compels that same result.

Respectfully submitted,

**WILLIAMS IAGMIN LLP**

DATED: May 17, 2024

Jon R. Williams, Esq.
Attorney for Plaintiff/Appellant,
SUSAN PITT

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## <u>FED.R.APP. 32(a)(7)(C) AND CIRCUIT RULES 31-1 and 32-1</u>

Pursuant to Fed.R.App.P. 32 (a)(7)(C), Ninth Circuit Rules 32-1 and 32-2, I certify that the attached brief is proportionally spaced, has a typeface of 14 points and contains 9,260 words.

Additionally, all printed copies of this brief are identical to the electronically-filed copies of this brief.

DATED:  May 17, 2024                    _____

Jon R. Williams

## **STATEMENT OF RELATED CASES**

I certify that no other cases in this Court are deemed related to this case pursuant to Circuit Rule 28-2.6.

DATED:  May 17, 2024

Jon R. Williams

***Susan Pitt v. Metropolitan Tower Life Insurance Company***
**United States Court of Appeals for the Ninth Circuit**
**Appellate Case No.: 23-55566**
**District Court Case No.: 3:20-CV-00694-JO-DEB**

## CERTIFICATE OF SERVICE
**When All Case Participants are Registered for the Appellate CM/ECF System**

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2475 Kettner Blvd., San Diego, California 92101.

I, the undersigned, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **May 17, 2024**.

1) **APPELLANT'S OPENING BRIEF**
2) **APPELLANT'S EXCERPTS OF RECORD (10 Volumes)**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: **May 17, 2024**     Signature: _Chenin Andreoli_
                            Chenin M. Andreoli